## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OUMAR ABDALLAH | : | CIVIL ACTION |
| Plaintiff, | : | No.: 10-CV-05054 |
| v. | : | |
| ALLEGHENY VALLEY SCHOOL and STAFFING PLUS INC. | : | |
| Defendants. | : | |

### ORDER

**AND NOW,** this _____ day of _____, 2010, after consideration of the

Motion Dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6) filed by

Defendant Allegheny Valley School, and consideration of Plaintiff's Response, it is

hereby **ORDERED** that Defendants' Motion is **DENIED.**

_____
The Hon. Petrese B. Tucker, U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OUMAR ABDALLAH : | CIVIL ACTION |
| Plaintiff, : | No.: 10-CV-05054 |
| v. : | |
| ALLEGHENY VALLEY SCHOOL : and STAFFING PLUS INC. : | |
| Defendants. : | |

## PLAINTIFF'S MEMORANDUM
## IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, by and through his undersigned counsel, hereby responds as follows to Defendant Allegheny Valley School's' Motion to Dismiss: [1]

### I.  Summary Response to Defendant's Argument(s)

Defendant's Motion basically raises 2 separate assertions for this Court to consider: (1) whether Plaintiff, who asserts he was discriminated because is an African Muslim, is entitled to protection under 42 U.S.C. Section 1981; and (2) whether Plaintiff is legally entitled to proceed with Defendant as a potential "joint employer" in the above-captioned matter under Title VII and Section 1981.

While this Court presumably frowns upon unnecessary attacks in Motion papers, Plaintiff is compelled to inform this Court that Defendant's Motion is point-blank misleading, frivolous and a waste of judicial resources such that Plaintiff's undersigned counsel nearly sought sanctions.

---

[1] Only Defendant Allegheny Valley School has filed a Motion to Dismiss. Plaintiff will from this point on only refer to Defendant Allegheny Valley School as "Defendant" (even though there is another defendant not a party to this Motion).

The Third Circuit and the Supreme Court have already spoken to Defendant's Section 1981 argument and have concluded that Plaintiff is protected under Section 1981. So have courts all over the country. As to Defendant's argument that Defendant cannot be a joint employer, that argument is universally rejected by Courts in this Circuit *at this stage* of the litigation because it is well established that a joint-employer relationship can only be determined after discovery has taken place (as such arguments are very fact sensitive). This is presumably why Defendant relied upon some select opinions around the country where joint-employer liability was denied *in motions for summary judgment and full discovery*.

Defendant's citations in both of its legal arguments do not actually represent the state of the law, and the entire motion is meritless.  For these reasons and those more specifically set forth herein, Plaintiff respectfully requests that Defendant's Motion be denied in its entirety.

## II. <u>Standard of Review for Motions Pursuant to Fed.R.Civ.P. 12(b)(6)</u>

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). To avoid dismissal, a complaint must set forth facts that raise a plausible inference that the defendant inflicted a legally cognizable harm upon the plaintiff. *See Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

In considering a motion to dismiss under Rule 12(b)(6), a court is required to "'accept all factual allegations as true, construe the complaint in the light most favorable

to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.' " *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 375 n. 7 (3d Cir.2002)).

In ruling on a motion to dismiss, the Court may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and records of which the Court may take judicial notice. *See Tellabs v. Makor Issues & Rts.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993).

**III.  Legal Argument**

### (1) *Plaintiff is entitled to Protection Under Section 1981*

**A.  The Text of 42 U.S.C. § 1981 states as follows and has been interpreted to prohibit racial and ancestral discrimination, as discussed *infra*.**

42 U.S.C. § 1981(a) states:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**B.  Although 42 U.S.C § 1981 references "contracts" in the text of the law, it is well established the law applies to at-will employees such as Plaintiff.**

Despite that Section 1981 references "contracts," at-will employees are clearly permitted to assert violations this law for racial/ancestral discrimination. *See Walker v. Abbott Laboratories*, 340 F.3d 471, 476 (7th Cir.2003)(stating that "at-will employment

4

creates a contract because the employer promises to pay the employee for certain work and the employee accepts the offer by beginning work" and that the "lack of a fixed duration of employment does not make the relationship any less contractual"); *See also* e.g. *Lauture v. Int'l Bus. Machs. Corp.,* 216 F.3d 258, 261-62 (2d Cir.2000); *Spriggs v. Diamond Auto Glass,* 165 F.3d 1015, 1018 (4th Cir.1999); *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.,* 160 F.3d 1048, 1051-52 (5th Cir.1998); *Skinner v. Maritz, Inc.,* 253 F.3d 337, 340 n. 1, 342 (8th Cir.2001); *Perry v. Woodward,* 199 F.3d 1126, 1133 (10th Cir.1999); *McClease v. R.R. Donnelley & Sons Co.,* 226 F.Supp.2d 695, 700-702 (E.D.Pa.2002)("Every appellate court that has examined the legislative history of the 1991 statute has concluded that Congress intended the term 'contract' to encompass at-will employment."); *Estate of Oliva v. New Jersey,* 579 F.Supp.2d 643 (D.N.J. 2008)(explaining that it is firmly established at-will employees can proceed for claims of racial/ancestral discrimination under Section 1981).

### C. Section 1981 clearly prohibits racial and ancestral discrimination within an employer's workplace and has been interpreted very broadly with respect to definitions of "race" and "ancestry."

The stated purpose of § 1981 is the "protection of citizens of the United States in their enjoyment of certain rights without discrimination on account of *race, color,* or previous condition of servitude." *United States v. Cruikshank,* 92 U.S. 542, 555, 23 L.Ed. 588 (1875) (emphasis added). In *McDonald v. Santa Fe Trail Transportation Company,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), the Supreme Court, in an exhaustive study of the legislative history of § 1981, made repeated references to the fact that the statute was originally enacted to apply to citizens of *"**every race and color** "*. 427 U.S. at 287 (emphasis added).

In *Saint Francis College v. Al-Khazraji* (originating in the 3rd Circuit), *481 U.S.*
*604, 107 S.Ct 2022, 95 L.Ed.2d 582 (1987)* the Supreme Court stated in no uncertain

terms that § 1981 "at a minimum reaches discrimination against an individual because he

or she is genetically part of an ethnically and physiognomically distinctive sub-grouping

of homosapiens." *Saint Francis College*, 107 S.Ct. at 2028. In fact, the Supreme Court

even went further by stating that ***it is not even essential to be physiognomically***

***distinctive.*** *Id.* at 107 S.Ct. 2028. (emphasis added).

In *Jatoi v. Hurst-Euless-Bedford Hosp. Authority*, 807 F.2d 1214 (5th Cir. 1987),

the Court expressly adopted a very broad application of Section 1981, as did the Third

Circuit, stating:

> [T]his circuit has refused to limit the protection of § 1981 to
> taxonomically defined racial groups. *Alizadeh v. Safeway Stores,*
> *Inc.*, 802 F.2d 111, 115 (5th Cir.1986) ***(adopting the analysis in***
> ***Al-Kyazraji v. Saint Francis College, 784 F.2d 505, 514-18 (3d***
> ***Cir.1986))*.*" To come within § 1981, a plaintiff need only allege
> he suffered discrimination based on his membership in a group
> that is commonly perceived to be "racial" because it is ethnically
> and physiognomically distinct. *Id. Al-Khazraji* interprets the
> statute to mandate that all persons be treated equally without
> regard to color or race. A label cannot control the substance of an
> action if we are to be obedient to the legislative purpose of §
> 1981.

Citing *Saint Francis College*, courts have explained that an individual's

appearance and physical characteristics are completely irrelevant to a claim under Section

1981. *See e.g. Franceschi v. Hyatt Corp.*, 782 F.Supp. 712, 724 (D.Puerto Rico 1992). It

is a misconception that claims of racial discrimination only protect one because of his or

her skin color. It is now very well established that Section 1981 protects all individuals

because of their (1) race; (2) ancestry; and (3) ethnic characteristics. *See Lopez v. S.B.*

*Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir.1987); *Krain v. Kahn*, 983 F.2d 1076 (9th Cir.

1992); *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 107 S.Ct 2022, 95 L.Ed.2d 582 (1987). *See also Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir.1998)(As a result, "[t]he prohibition against racial discrimination [codified in Section 1981] encompasses discrimination based on ancestry or ethnic characteristics.); *Ganthier v. North-Shore Long Island Jewish Health System, Inc.*, 345 F.Supp.2d 271, 281 (E.D.N.Y.2004) (Spatt, J.)("Under Section 1981, 'race' includes ancestry and ethnicity.").

Section 1981 prohibits racial discrimination against whites as well as nonwhites. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295 (1976)(Section 1981 was intended to "proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race").[2] In *Runyon v. McCrary*, 427 U.S. 160 (1976), the Supreme Court held that Section 1981 regulated private conduct as well as governmental action.

Race and ancestry are often so intertwined national origin that the difference is indiscernible. For example, Asian ancestry is considered a "race" under Section 1981. *See e.g. Manatt v. Bank of America*, 339 F.3d 792, 798 (9th Cir. 2003) (holding that discrimination based on Asian ancestry is unlawful under §1981); *Van Meter v. Jefferson Smurfitt Corp.*, WL 640432 (N.D. Ga. 1996)(Asians and/or Orientals are a race and are subject to protection under civil rights statutes); *See also Silvestre v. Bell Atlantic Corp.*, 973 F.Supp. 475 (D.N.J. 1997)(Asians protected against racial discrimination); *Park v.*

---

[2] In *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), the Court held that a white plaintiff who had been dismissed from his job had a cause of action under § 1981 for race discrimination, notwithstanding the statute's reference to white persons as the favored comparator group.

*Hyatt Corp.*, 436 F.Supp.2d 60 (D.D.C. 2006)(same). Asians are a racial group within the scope of Section 1981. Caucasians are a racial group under Section 1981.[3]

In *St. Francis College v. Al-Khazraji*, 481 U.S. 604 (1987), the Court reversed the grant of summary judgment by a court in the Western District of Pennsylvania, holding that Section 1981 does prohibit discrimination against an employee because he was Arab. In a concurring opinion, Justice Brenan stated that there is not a bright line between race and national origin. *Id.* at 614. Justice Brenan further clarified that with respect to the holding in *St. Francis College*, he interprets "the Court's opinion to state only that discrimination based on *birthplace alone* is insufficient to state a claim under § 1981" but implicitly concluding that anything related to one's culture or ethnic characteristics is protected.

In *Spiess v. C. Itoh & Co.*, 408 F.Supp. 916 (S.D.Tex.1976), a class of white American citizens filed suit on behalf of themselves and all other non-secretarial personnel of non-Japanese national origin who had been discriminated against by a Japanese-owned corporation. Recognizing that in this situation "national origin" discrimination was indistinguishable from "racial" discrimination, the court held that three white Americans were permitted to sue under §1981 to vindicate the rights of a class of non-Oriental, non-Japanese persons that included non-white citizens.

In *Bullard v. Omi Georgia, Inc.*, 640 F.2d 632 (5th Cir.1981), black **and** white employees alleged discrimination when they were fired by a Japanese manager and replaced by employees whose race was Oriental and whose national origin was Korean. Plaintiffs' asserted they had been discriminated against on the basis of both race and

---

[3] *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295 (1976).

national origin. The court denied defendants' motion for summary judgment as to Section 1981 claims, noting that summary judgment is always questionable in employment discrimination cases involving motive and intent, particularly where the issue is national origin versus race:

> Appellants have stated and supported a case of racial discrimination. The line between national origin discrimination is an extremely difficult one to trace. An attempt to make such a demarcation before the parties have had an opportunity to offered at trial is inappropriate.

*Bullard,* at 634.

In *Adames v. Mitsubishi Bank, Ltd.*, 751 F.Supp. 1548 (E.D. N.Y. 1990), non-oriental employees brought a class action against the defendant asserting violations of Section 1981 because they were denied promotions in lieu of oriental (and particularly Japanese) employees. The Court refused to decertify the class action and held that the plaintiffs had stated a proper cause of action for racial discrimination under Section 1981.

In *Long v. Marubeni America Corp.*, 406 F.Supp.2d 285 (S.D.N.Y. 2005), multiple plaintiffs alleged they were discriminated against due to favoritism towards Asian employees. As in the instant case, the defendant attempted to argue to the court that the plaintiffs were really making an argument about *national origin discrimination* not encompassed in Section 1981. In denying a motion to dismiss, the Court explained that such an argument by defendant was "without merit," holding that discriminatory preferences towards Asians is actionable under Section 1981 by non-Asian employees. *Id.* at 288. The Court expressly stated that if a jury concludes that Asians were preferred over Caucasian (or non-Asian) employees, a defendant would properly be held liable under Section 1981.

9

In *Shane v. Tokai Bank Ltd.*, WL 639255 (S.D.N.Y. 1997), the Court denied summary judgment wherein plaintiffs were alleging, under Section 1981, they were discriminated against because of their race in light of Japanese employees being favored. In denying summary judgment, the Court noted that discriminatory comments such as preferences for hiring Asians and statements that "Asians work harder" combined with other evidence of pretext sufficiently demonstrated that material issues of fact existed as to a claim of racial discrimination. *Id.* at * 1. These exact types of cultural discriminatory comments were made in the instant case towards Americans and non-Asian employees.

      **D.**  **As evidenced by the following case examples, Section 1981 is extremely broad with respect to the scope and definition of racial/ancestral discrimination (and would thus clearly encompass Plaintiff).**

In *Saint Francis College*, the Supreme Court has essential instructed that anything related to ones culture, ancestry, racial group, or ethnic characteristics is actionable under Section 1981.  Race has been construed very broadly post-*Saint Francis College*.  *See e.g. DeCorte v. Jordan*, 497 F.3d 433 (5th Cir. 2007)(White and Hispanic employees prevailed in a Section 1981 lawsuit because the defendant replaced and discriminated against them in favor of African-American employees and judgment was affirmed); *Franceschi v. Hyatt Corp.*, 782 F.Supp. 712, 724 (D.Puerto Rico 1992)(denying summary judgment to a defendant because Puerto Ricans held to constitute a race and ethnic group under Section 1981); *Trujillo v. Board of Educ. of Albuquerque Public Schools*, WL 4079033 (D. N. M. 2006)(denying a defendant's motion pursuant to Rule 12(b)(6) because Hispanic ancestry constitutes a race under Section 1981); *Manzanares v. Safeway Stores, Inc.*, 593 F.2d 968, 969-71 (10th Cir.1979)(In reversing a district court's dismissal, the court held that Mexican-American decent was held to be protected under

Section 1981); *Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1188 (2d Cir.1987)(Reversing grant of summary judgment and holding that Puerto Ricans constitute a race as defined by Section 1981); *Reid v. Evergreen Aviation Ground Logistics Entertainment*, Inc., WL 1902226 (D.Or. 2008)(discovery was permitted by plaintiff about discriminatory comments about a British plaintiff's national origin because this ancestry is protected under Section 1981); *Krain v. Kahn*, 983 F.2d 1076 (9th Cir. 1992)(Reversing the grant of summary judgment by a district court holding that Jewish Ancestry is protected under Section 1981); *Chandoke v. Anheuser-Busch, Inc.,* 843 F.Supp. 16, 19 (D.N.J.1994)(denying summary judgment because a genuine issue existed concerning whether the employer discriminated based on the plaintiff's Indian ethnicity); *Enriguez v. Honeywell, Inc.*, 431 F.Supp. 901 (W.D.Okla.1977)(Americans of Spanish descent stated a cause of action under Section 1981 for racial discrimination); *Cuello-Suarez v. Autoridad de Energia Electrica de Puerto Rico*, 737 F.Supp. 1243, 1248 (D. Puerto Rico 1990)(holding that discrimination against a citizen of the Dominican Republic by or in favor of a citizen of Puerto Rico was actionable under Section 1981, even though Dominicans and Puerto Ricans could be considered to be part of the Hispanic race at the present time; the protective arm of the statute, as envisioned by Congress in 1870, shielded the Dominican from any act of discrimination by or in favor of the other); *Blake-McIntosh v. Cadbury Beverages, Inc.*, WL 643660 (D.Conn. 1999)(Summary Judgment denied because there was sufficient evidence that employee was discriminated against based upon her Indian ancestry); *Khawaji v. Wyatt*, 494 F.Supp. 303 (D.C.N.Y. 1980)(Summary judgment claim denied under Section 1981 because Court held that Pakistani-Americans are entitled to protection under Section 1981); *Alizadeh v. Safeway*

11

*Stores, Inc.*, 802 F.2d 111 (5th Cir. 1986)(White female married to Iranian could state claim under § 1981 for discrimination directed toward her).

The commentary given by the Third Circuit in support of Model Jury Instruction 6.2.1 (Racial Discrimination under Section 1981), states in part:

> Note that Section 1981 does not prohibit racial discrimination that is solely on the basis of location of birth (as distinct from ethnic or genetic characteristics). *See Bennun v. Rutgers State Univ.*, 941 F.2d 154, 172 (3d Cir. 1991) ("Section 1981 does not mention national origin"); *King v. Township of E. Lampeter*, 17 F. Supp. 2d 394, 417 (E.D. Pa. 1998) (holding that disparate treatment on the basis of national origin was not within the scope of Section 1981). While the line between race and national origin may in some cases be vague, *it must be remembered that the Court in St. Francis College intended that the term "race" be applied broadly. Thus, in Schouten v. CSX Transp., Inc., 58 F.Supp.2d 614, 617-18 (E.D. Pa. 1999), the court declared that "for purposes of Section 1981, race is to be interpreted broadly and may encompass ancestry or ethnic characteristics.*"

> Third Circuit Model Jury Instruction 6.2.1 Commentary. (emphasis added).

### E. Section 1981 squarely protects Plaintiff and applicable jurisprudence interpreting Section 1981 amply demonstrates that Defendant's Motion is frivolous.

Plaintiff is an African Muslim. Court addressing cases analogous to the instant case wherein race and ancestry are intertwined have held that 42 U.S.C. Section 1981 prohibits discrimination against one's race and religion. The Supreme Court has held that Jewish ancestry is a race for purposes of § 1981. *Saint Francis College v. Al-Khazaraji,* 481 U.S. 604, 611-613 (1987). *See also Shaare Tefila Congregation v. Cobb,* 481 U.S. 615 (1987) (Jews are a race for purposes of § 1982); *Benigni v. City of Hemet,* 879 F.2d 473, 478 (9th Cir.1988); *Smith v. Speciality Pool Contractors,* WL 4410163 (W.D. Pa. 2008)(Persons of Jewish Ancestry are a distinct race); *Krain v. Kahn,* 983 F.2d 1076 (9th

Cir. 1992)(Reversing the grant of summary judgment by a district court and holding that Jewish Ancestry is protected under Section 1981).

Muslims of a particular race also enjoy protection under Section 1981. *See e.g. Al-Khazraji v. Saint Francis College*, 784 F.2d 505 (3d Cir. 1986)(reversing district court and holding that Arab man of Muslim faith stated a cause of action under Section 1981); *Azimi v. Jordan's Meats, Inc.*, 456 F.3d 228 (1st Cir. 2006)(affirming trial verdict under Section 1981 claim for Muslim from Afghanistan but confirming that in light of misconduct by employee that jury's finding of no damages was appropriate); *Omari v. Waste Gas Fabricating Co.*, Inc. WL 545294 (E.D. Pa. 2005)(Hart, J.)(holding in bench trial that a defendant violated Section 1981 by terminating an employee because he was an Algerian Muslim); *Haynes v. R.W. Selby & Co.*, Inc., 338 Fed.Appx. 694 (9th Cir. 2009)(reversing district court and holding that African Muslim could state a cause of action under 42 U.S.C. Section 1981); *Joseph v. Louisiana State Penitentiary*, 482 F.2d 277 (5th Cir. 1973)(reversing district court for dismissing a prisoner complaint when he asserted he was discriminated against under Section 1981 for being Muslim).

In sum, Defendant cites some cases where Plaintiffs inadvertently or unwittingly filed national origin discrimination claims under Section 1981. However, Plaintiff in the instant case very carefully pleaded in his Complaint that "[he]" was terminated because of his race, ethnic characteristics and/or ancestry, as his religion is part of same." *See* Complaint, at ¶ 24 (after explaining the discrimination he experienced in more detail). There can be no question that Plaintiff pleaded sufficiently to allow him to recover under Section 1981. If Defendant thought after discovery that Plaintiff's claims could only be considered national-origin based from a legal standpoint and not within the scope of

13

Section 1981, it may be justified in filing a Motion to Dismiss but certainly not at this stage of litigation.

### (2) *Defendant's Motion to Dismiss based upon it not possibly being a joint employer is contrary to well established jurisprudence.*

As with Defendant's Section 1981 legal argument, it does not challenge the sufficiency of pleading, but rather, as to whether Plaintiff could recover *as a matter of law* under the facts asserted in his Complaint.

**A. Plaintiff has brought Section 1981 Claims and Title VII claims against both Defendants in this case, and these laws permit joint liability and are analyzed identically.**

It is well established that under employment laws, such as Title VII, employers can be held liable as joint employers. *See e.g. Graves v. Lowery,* 117 F.3d 723, 727 (3d Cir.1997). For the purposes of all analyses, Section 1981 and Title VII are analyzed in the same manner. *See e.g. Jones v. School Dist. of Phila.,* 198 F.3d 403, 410 (3d Cir.1999)(Section 1981 claims alleging race and national origin discrimination are analyzed under the same framework as Title VII claims.). *See also Ade v. Kidspeace Corp.,* WL 98116 (3d Cir. 2010).

**B. It is well established that factual discovery is required before a motion to dismiss should be entertained as to a joint-employer relationship.**

It is well established within the Third Circuit that a plaintiff should be able to engage in fact discovery to prove the existence of a joint-employer relationship and that such claims should not be dismissed at the pleading stage. *See Graves v. Lowery,* 117 F.3d 723, 729 (3d Cir.1997)("the precise contours of an employment relationship *can only be established by a careful factual inquiry*")(emphasis added); *Thompson v. U.S.*

*Airways, Inc.* ---F.Supp.2d.----,WL 2384986 (E.D. Pa. 2010)(Pratter, J.)(explaining that it would be inappropriate to dismiss allegations of a joint-employer relationship at the pleading stage); *Braden v. County of Washington*, F.Supp.2d., WL 5129919 (W.D.Pa. 2008)(denying a motion to dismiss and stating that only summary judgment is appropriate to determine if, after factual inquiry, a plaintiff can't establish a joint-employer relationship); *Gustovich v. St. Clair Hosp.*, Inc., WL 1840747 (W.D. Pa. 2008)(a fully developed record through factual discovery is required before the court can entertain a motion to dismiss on the issue of a joint employer); *Hartman v. Chestnut Hill College*, F.Supp.2d., WL 1016655 (E.D. Pa. 2000)(Fullam, J.)(denying a motion to dismiss because without discovery on the joint employer issue, a motion to dismiss is premature) *See also Zavala v. Wal-Mart Stores, Inc.*, 393 F.Supp.2d 295 (D.N.J. 2005)(Motion to Dismiss pursuant to Rule 12 denied where sufficient facts alleged in Complaint as discovery was necessary for further evaluation of joint-employer relationship)

Defendant relies primarily upon summary judgment holdings in its Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) - summary holdings that do not bare similarities to the instant case anyway.

### C. The joint-employer test requires facts elicited in discovery to be applied to specific factors set forth by the Third Circuit.

Where separate corporate entities are so interrelated and integrated in their activities, labor relations, and management, it is clear that for civil rights laws such as the ADA, Title VII, and 42 U.S.C. § 1981 that they may be treated as a single employer or a joint employer. *EEOC v. Upjohn Corp.,* 445 F.Supp. 635, 639 (N.D. Ga. 1977); *Williams v. New Orleans Steamship Association,* 341 F.Supp. 613, 615 (E.D. La. 1972).

As the Third Circuit explained in *NLRB v. Browning-Ferris Industries of Pennsylvania*, a joint employment relationship may exist when "one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." 691 F.2d 1117, 1123 (3d Cir.1982)

Under the "joint employer" theory, the number of employees of two or more separate entities may be aggregated. Unlike the single employer scenario, "[i]n joint employer situations no finding of a lack of arm's length transaction or unity of control or ownership is required." *Id.* The basis of the finding of joint employer is simply that one employer while contracting in good faith with another company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer. *Id.* at 1123.

The Third Circuit has held that two entities constitute joint employers where "they share or co-determine those matters governing essential terms and conditions of employment. *Id.* at 1124. To determine whether this test has been met, several factors may be considered including: "(1) authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (2) day-to-day supervision of employees, including employee discipline; and (3) control of employee records, including payroll, insurance, taxes and the like." *Zarnoski v. Hearst Business Communications, Inc.,* (E.D. Pa. 1996) WL 11301, at *8. *See also Local 773, Int'l Bhd. of Teamsters v. Cotter & Co.,* 691 F.Supp. 875, 887 (E.D.Pa.1988); *TLI, Inc.,* 271 N.L.R.B. 798, 1984 WL 36756 (1984), *enforced,* 772 F.2d

894 (3d Cir.1985); *Clinton's Ditch Co-Op v. NLRB*, 778 F.2d 132 (2d Cir.1985), *cert.*
*denied sub nom., Teamsters Local 317 v. Clinton's Ditch Co-op*, 479 U.S. 814 (1986).

In *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669 (5th Cir.1968), the Court
explained "[w]hether a person or corporation is an employer or joint employer is
essentially a question of fact." In the instant case, it would be inconceivable for this Court
to apply factors of a joint employer-test that are specifically dependent upon factual
discovery.

### D. Defendant's representations to this Court that staffing agencies or subcontractors cannot be joint employers are absurd and utterly false.

Employers can be liable for civil rights violations if they are not the typical
hiring/payroll employer of an individual. *See e.g. Grace v. USCAR*, 521 F.3d 655 (6th
Cir. 2008)(explaining that when a joint employer does nothing wrong, it can still be held
liable for the actions of a companion joint employer); *Equal Employment Opportunity*
*Commission v. Sage Realty Corp.*, 507 F.Supp. 599 (D.C.N.Y. 1981)(an employer is
liable for the discriminatory acts of another employer deemed to be a joint employer).

Many Court have sustained findings of a potential joint- employer relationship
between two completely independent companies. *See e.g. See, e.g., Moore v. Universal*
*Coordinators, Inc.*, 423 F.2d 96, 99-100 (3d Cir.1970)(holding that truck drivers were
employees of both noncarrier truck driver leasing company and private motor carrier);
*Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132 (2nd Cir.
2008)(hospital was joint employer of nurses paid by separate referral agency); *Graves v.*
*County of Dauphin*, 98 F.Supp. 2d 613 (M.D. Pa. 2000)(finding fact questions in Title
VII joint-employer claim to warrant denial of summary judgment after reversal and

remand by Third Circuit); *Grace v. USCAR,* 521 F.3d 655, 667-68 (6th Cir.2008) (finding

that an employment agency and the company with which it placed employees were joint

employers and the agency was the primary employer); *Carrier Corp. v. NLRB,* 768 F.2d

778, 781 (6th Cir.1985) (employer was a joint employer because it exercised substantial

day-to-day control over referred employees, consulted with referral agency over wages

and fringe benefits, had the authority to reject an employee and could direct referral

company to remove an employee); *Diaz v. Legion Personnel, Inc.,* WL 3732768 (N.D.

Ill. 2010)(Motion to Dismiss denied because staffing agency and placement company can

be held to be joint employers); *Haliye v. Celestica Corp.,* 717 F.Supp. 2d 873 (D. Minn.

2010)(holding that summary judgment was denied because genuine issues of material

fact existed as to whether temporary-employment agency and company where agency

placed Muslim employees were joint employers); *Western Truck Manpower v. United*

*States Dep't of Labor,* 12 F.3d 151, 152 (9th Cir.1993) (leasing agency and company that

leased driving services were joint employers when one company provided employees to

the other); *Nelson v. Beechwood Org.,* No. 03 Civ. 4441(GEL), 2004 WL 2978278, at *3

(S.D.N.Y. Dec. 21, 2004) (fact question existed as to whether subcontractor and

contractor were functionally joint employers of plaintiff); *DeWitt v. Lieberman,* 48

F.Supp.2d 280, 288 (S.D.N.Y.1999)(employment agency that paid plaintiff and client

entity that supervised plaintiff considered plaintiff's joint employers); *Laurin v. Pokoik,*

No. 02 Civ.1938(LMM), 2004 WL 513999, at *4 (S.D.N.Y. March 15, 2004)(fact

questions existed as to whether sole proprietorship where plaintiff worked and

corporation that employed proprietor were single employer and/or joint employers); *See*

*also Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 611 F.Supp. 344, 347-49

18

(S.D.N.Y.1984)(utilizing common-law loaned servant doctrine to hold that plaintiff was employee of both temporary employment agency and client entity for Title VII purposes); *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 69 (2d Cir.2003)(A manufacturing company and the contractors through which they secured the labor of garment workers in New York City's Chinatown were considered joint employers; *See Ansoumana v. Gristede's Operating Corp.*, 255 F.Supp.2d 184 (S.D.N.Y.2003)(contractors were found to be joint employers, along with supermarket and drugstore corporations, of delivery workers.

### IV. <u>Conclusion</u>

For the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion to Dismiss be denied in its entirety.

Respectfully Submitted,

**KARPF, KARPF &VIRANT, P.C.**

/s/ Ari R. Karpf
Ari R. Karpf, Esq.

Dated: November 29, 2010

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| OUMAR ABDALLAH | : | CIVIL ACTION |
| Plaintiff, | : | No.: 10-CV-05054 |
| v. | : | |
| ALLEGHENY VALLEY SCHOOL and STAFFING PLUS INC. | : | |
| Defendants. | : | |

### CERTIFICATE OF SERVICE

I certify on the date set forth below, that I served Defendants with Plaintiff's Response to Defendants' Motion to Dismiss via ECF to the following counsel/parties of record (and to Defendant Staffing Plus, Inc. via U.S. Mail):

Patrick Murphy
Edward Murphy
350 Sentry Parkway, Bldg. 640, Ste. 300
Blue Bell, PA 19422
For Defendant Allegheny Valley School

- and -

Brian Spence, Vice President / Human Resources
Staffing Plus, Inc.
551 W. Lancaster Avenue
Haverford, PA 19041
For Defendant Staffing Plus Inc.

/s/ Ari R. Karpf
Ari R. Karpf

Dated:  November 29, 2010